## CHERKEZOV,
### *Respondent,*
### *v.*
## UNIVERSAL UNDERWRITERS INSURANCE COMPANY,
### *Appellant,*
## CAVALIER INSURANCE COMPANY,
### *Respondent.*

### (No. A 7802-01799, CA 16541)

621 P2d 588

John H. Holmes, Portland, argued the cause for appellant. With him on the briefs were John S. Folawn and Jensen, DeFrancq, Holmes & Schulte, Portland.

Allen T. Murphy, Jr., Portland, argued the cause for respondent Kate J. Cherkezov. With him on the brief was Richardson, Murphy, Nelson & Lawrence, Portland.

Alonzo P. Stiner, Portland, argued the cause and filed the brief for respondent Cavalier Insurance Company, a Maryland corporation.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

The issue in this case is whether the liability insurer of an automobile dealer is liable to plaintiff for injuries she sustained as a result of the negligent operation of one of the dealer's vehicles by a customer to whom the dealer had loaned it.

Plaintiff was injured in a collision between a car in which she was a passenger and one driven by the defendant Reid. The car Reid was operating was owned by Marv Tonkin Ford Sales, Inc. (Tonkin), and had been loaned to Reid by Tonkin while Reid's own car was being serviced. Plaintiff obtained a judgment against Reid, which was partially satisfied by Reid's insurer, the defendant Cavalier Insurance Company (Cavalier). In this action, plaintiff seeks damages for the unpaid balance of that judgment from Tonkin's excess liability insurer, Universal Underwriters Insurance Company (Universal),[1] and Cavalier seeks damages from Universal sufficient to prorate the two insurers' liability to plaintiff in accordance with *Lamb-Weston v. Ore. Auto. Ins. Co.,* 219 Or 110, 341 P2d 110, 346 P2d 643 (1959). Plaintiff and Cavalier contend that, at the time of the accident, Reid was an additional insured under the omnibus clause of Universal's policy insuring Tonkin. The Tonkin policy is a garage policy which has a number of parts providing coverage under a number of different circumstances. Part 810—the so called Umbrella Liability—is the section upon which plaintiff relies as providing coverage for Reid.

Page 1 of Part 810 provides as follows:

"1.
"INSURANCE AFFORDED IS ONLY WITH RESPECT TO (A) THE HAZARD IN THIS SCHEDULE, AND (B) THE NAMED OR DESIGNATED INSURED SET OPPO- SITE SUCH HAZARD IN THIS SCHEDULE BY ENTRY OF THE IDENTIFYING NUMBER OR LETTER DE- CLARED IN PART B.

---

[1] Reid made a partial assignment of his cause of action against Universal to plaintiff.

"S C H E D U L E

|  |  | APPLICABLE |
|---|---|---|
| "HAZARD | INSURED | ENDORSEMENTS |
| "UMBRELLA LIABILITY | 01,02 | 03,04 |

"LIMIT OF THE COMPANY'S LIABILITY IS $1,500,000 EACH OCCURANCE [SIC] AND $1,500,000 AGGRE-GATE, SUBJECT TO ALL PROVISIONS OF THIS POLI-CY.

"2.  RETAINED LIMIT:  $10,000.

"3.  SCHEDULE OF UNDERLYING INSURANCES: (A) ALL OTHER COVERAGE PARTS OF THIS POLICY PROVIDING LIABILITY INSURANCE."

The numbers 01 and 02 under the "INSURED" column refer to Marv Tonkin Ford Sales, Inc. and Marv Tonkin Leasing.

Page 2 of Part 810, which is a preprinted standard form, includes as a definition of the insured the following:

"'INSURED' means not only the NAMED INSURED but also:

"(d)  with respect to any automobile, aircraft or water-craft owned by or hired for use in behalf of the NAMED INSURED, any person while using such automobile, air-craft or watercraft or any persons or organization legally responsible for the use thereof, provided the actual use of such automobile, aircraft or watercraft is with the permis-sion of the NAMED INSURED * * *."

Page 3 of Part 810 provides that there shall be *no coverage:*

"(j)  with respect to the ownership, maintenance, use, loading or unloading of any automobile while leased, rent-ed or loaned by the NAMED INSURED to any person or organization or while in the possession of any customer or prospective customer of the NAMED INSURED, provided that this exclusion shall not apply to the liability of the NAMED INSURED insofar as coverage with respect to such automobile is available to the NAMED INSURED in the underlying insurance listed on Page One of this Cover-age Part."

The trial court concluded that the omnibus clause covered Reid's use of the car and awarded damages and

attorney fees to plaintiff and to Cavalier. Universal appeals, and we reverse.[2]

Universal argues that exclusion (j) of its policy renders its coverage inapplicable to the accident in which plaintiff was injured.

The trial judge stated in his letter opinion:

"Paragraph j, I think, simply insures that primary coverage, if any, is exhausted before umbrella coverage comes into play."

In our view, however, the paragraph is primarily intended to exclude *any* umbrella coverage under the circumstances to which it relates, *e.g.,* the "use * * * of any automobile while leased, rented or loaned" by the insured "or while in the possession of any customer or prospective customer" of the insured. Here, the parties stipulated:

"That at the time of the accident of November 11, 1974, Reid was driving a loaner automobile furnished to him for his use by Marv Tonkin Ford while his car was being repaired by Marv Tonkin Ford."

Accordingly, at the time of the accident the car was being used under circumstances to which exclusion (j) applied, to-wit, by a customer of the insured. Where the exclusion applies, coverage which would otherwise .exist under the insuring agreements, including the omnibus clause, is negated. It would follow that there was no coverage under the policy for the accident in which plaintiff was injured, and that she is barred from recovering. The proviso portion in paragraph (j) which reads

" * * * provided that this exclusion shall not apply to the liability of the NAMED INSURED insofar as coverage

[2] Universal makes six assignments of error, only one of which we need reach to decide the case. None of those assignments of error complies with Rule 7.19, Rules of Appellate Procedure, which requires that pertinent parts of the record be set forth verbatim. Indeed, Universal's assignments do not even refer to the places in the record where the relevant proceedings in the trial court can be found. If it were necessary for us to search the record in order to consider Universal's arguments, we would not be assisted by Universal's abstract of record, which violates Rule 7.25's requirements pertaining to contents and chronological sequencing of abstracts. In addition to numerous other omissions, Universal's abstract does not contain and makes no reference to plaintiff's complaint or Universal's answer. Because the issue which we regard as decisive turns on the interpretation of contractual language and its application to stipulated facts, we are able to consider that issue without searching the record, and we therefore hesitantly exercise our discretion to consider the issue notwithstanding Universal's violations of our rules.

with respect to such automobile is available to the
NAMED INSURED in the underlying insurance listed on
Page One of this Coverage Part, * * *"

refers only to the liability of the NAMED INSURED which
is covered by the underlying insurance listed in Part 810,
an issue not here presented.

■    Plaintiff does not strenuously argue that the exclu-
sion is inapplicable or that it is consistent with her recov-
ery. Instead, she argues that Universal "waived" the exclu-
sion by failing to plead it as an affirmative defense or to
rely on it during trial. Universal makes two points in
response. The first is that plaintiff alleged *generally* that
Reid was insured by Universal's policy. Consequently,
plaintiff had the burden of proving that coverage existed
under the policy, including its exclusions, and it was not
necessary for Universal to plead exclusion (j) affirmatively.
Universal's second point is that plaintiff "waived" any
pleading defect on Universal's part by introducing the
entire policy, including exclusion (j), into evidence, and by
failing to object to the court's consideration of the effect of
the exclusion after Universal had raised that issue in a
closing trial memorandum.[3]

Universal relies on *Mitchell v. City of Portland,* 159
Or 91, 78 P2d 582 (1938), where the plaintiff employe
alleged that he had been laid off in violation of the civil
service provisions of the city charter and that another
employe, Shieve, "was continued in the city's employ and
performed work that should have been assigned to the
plaintiff." 159 Or at 93. At trial, the city's defense was that
it had made payments to Shieve in good faith for the
services which should have been assigned to the plaintiff
and that the city was therefore excused from paying dam-
ages to the plaintiff for the period during which he was
wrongfully laid off.[4] However, the city had not pleaded its

---

[3] The basis for our decision is Universal's second point. It is unnecessary for
us to consider either Universal's first point or plaintiff's contention that Univer-
sal could not rely on the exclusion without having pleaded it affirmatively.

[4] We do not imply that this defense would be compelling if made under
comparable facts today. *See Myers/Sherwood v. Tualatin RFD,* 5 Or App 142, 483
P2d 95 (1971).

payment defense affirmatively, and the plaintiff argued that the city was therefore barred from relying on the defense. The Supreme Court disagreed, stating:

" * * * But, as already indicated, the complaint avers plaintiff's seniority and the fact that Shieve was given the employment to which the plaintiff was entitled. The plaintiff's evidence disclosed payment to Shieve; in other words, the latter's employment and payment were not proved by challenged testimony. Under these circumstances, the plaintiff cannot claim to have been prejudiced through surprise or inadequate opportunity to produce evidence when the appropriate legal principles were applied to these facts, for the verity of which he himself vouched. These facts disclose nonliability upon the city's part. A plaintiff whose evidence discloses a defense is deemed to have waived the defect arising from his adversary's failure to have made the appropriate averments * * *." 159 Or at 97-98.

Similarly, in *Adair, Adm'x v. Valley Flying Service,* 196 Or 479, 250 P2d 104 (1952), the court stated:

"It is a well-established general rule in this state that contributory negligence is an affirmative defense that must be specially pleaded, or it is waived. However, there is a well-recognized exception to that rule. If plaintiff's own evidence clearly discloses contributory negligence on his part, as a matter of law, or if the fact of such negligence is disclosed or put in issue by the allegations of the complaint, no recovery can be had by plaintiff, even though contributory negligence has not been specially pleaded as a defense. * * *" 196 Or at 483-84.

*Cf., Fulton Ins. v. White Motor Corp.,* 261 Or 206, 219, 493 P2d 138 (1972).

In the present case, the entire Tonkin policy was placed in evidence by plaintiff. Exclusion (j) was therefore before the court; the defense to recovery it provided Universal was disclosed by plaintiff's own evidence, and plaintiff is not aided by the fact Universal did not plead the defense.

Plaintiff argues that, in addition to not affirmatively pleading the exclusion, Universal "did not rely upon the exclusion * * * either before or during the trial itself." The case was tried to the court, and the trial judge requested that the parties submit closing memoranda, in the form

of letters, in lieu of any oral argument they wished to present. So far as we can determine, Universal's first reference to exclusion (j) is to be found in the memorandum it sent to the court after all evidence had been put on. Universal argues that its failure to raise the issue during the evidentiary part of the trial was "waived" by plaintiff, because approximately one month elapsed from the date of Universal's memorandum to the date the court advised the parties of its decision, and plaintiff interposed no objection to the court's consideration of Universal's argument regarding exclusion (j) during that time. That, however, is not the point. The exclusion was in evidence. This bars recovery. No objection by plaintiff to Universal's basing an argument upon it or the court's considering it would have been well taken.

The principle enunciated in the *Mitchell* and *Adair* decisions also supports reversal. It may be that that principle is not an appropriate one in this or other cases involving the interpretation of insurance policies. The policy in this case can be better measured with a ruler than by the page, and exclusion (j), which is so clearly relevant, was apparently so obscured by the surrounding verbiage that even counsel for the insurer did not discover the exclusion until he was preparing his closing memorandum. The better rule here might be one which recognizes the reality that a plaintiff suing on a policy has far less opportunity to be familiar with its interstices than does the insurer which issued it. However, it is for the Supreme Court rather than this court to adopt such a rule.

Reversed.