Argued and submitted November 23, 1992, reversed and remanded in part;
otherwise affirmed June 9, 1993

Ralph G. MARTIN
and Betty R. Martin,
Co-personal Representatives of
the Estate of David R. Martin, Deceased,
*Plaintiffs,*

*v.*

Roger YUNKER,
dba Roger's Pacific Watersports,
and Kenneth L. Dickman,
*Third-Party Plaintiffs - Appellants,*

*v.*

Ralph G. MARTIN
and Betty R. Martin,
husband and wife,
*Third-Party Defendants - Respondents.*

(C88-0297CV)

Roger YUNKER,
dba Roger's Pacific Watersports,
and Kenneth L. Dickman,
*Appellants.*

*v.*

Ralph G. MARTIN
and Betty R. Martin,
husband and wife,
*Respondents.*

(C89-1027CV; CA A71623)

853 P2d 1332

Christopher C.S. Blattner, Portland, argued the cause and filed the briefs for appellants.

William H. Stockton, Hillsboro, argued the cause for respondents. With him on the brief was Brisbee & Stockton, Hillsboro.

Before Warren, Presiding Judge, and Edmonds and Landau,* Judges.

LANDAU, J.

Warren, P. J., concurring.

* Landau, J., *vice* Riggs, J.

## LANDAU, J.

Plaintiffs' son died in an open-water scuba diving accident that occurred during a diving course taught by defendants. Plaintiffs brought a wrongful death action against defendants on behalf of their son. Defendants filed a third-party complaint for contribution against plaintiffs in their individual capacities, on the basis of allegations that the parents were negligent in their supervision of their son during the diving course. Defendants also filed a separate action for indemnification, on the basis of a standard form indemnification agreement that plaintiffs signed at the beginning of the class. The parties settled the wrongful death action, and the trial court dismissed the contribution and indemnification claims. Defendants appeal from the judgment of dismissal. We reverse in part and affirm in part.

Defendants first assign error to the dismissal of their contribution claim. The trial court held that the claim could not be maintained against plaintiffs because, as parents, they are immune from liability to their son. Defendants argue that plaintiffs' conduct alleged in the third-party complaint is not of the kind that gives rise to parental immunity. We agree.

On review of the trial court's dismissal of the contribution claim before trial, we assume the truth of all well-pleaded allegations and draw all reasonable inferences from those facts in favor of defendants. *Machunze v. Chemeketa Community College*, 106 Or App 707, 712, 810 P2d 406, *rev den* 312 Or 16 (1991). In their third-party complaint, defendants alleged that the son's death was a result of plaintiffs' negligence in a number of particulars, including that plaintiffs failed to inform defendants that their son had severe learning disabilities, was dyslexic and would have difficulty learning the information necessary to participate safely in scuba diving; that plaintiffs completed weekly quizzes for him in connection with the classroom portion of the diving instruction; and that plaintiffs failed to report to defendants that their son complained of stomach pains before the fatal open-water dive.

The extent to which that conduct may give rise to parental liability is governed by the Supreme Court's decision in *Winn v. Gilroy*, 296 Or 718, 681 P2d 776 (1984). There, the

court held that the trial court had improperly dismissed a wrongful death claim brought by the representatives of children who had died in an automobile accident while travelling with their intoxicated father. In reaching its decision, the court retreated from a general common law rule that parents are always immune in negligence actions brought by their children. 296 Or at 731. It applied instead the *Restatement (Second) Torts* § 895G (1979), as the rule of parental liability. That rule provides:

> "(1)   A parent or child is not immune from tort liability to the other solely by reason of that relationship.
>
> "(2)   Repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or is not tortious."

In applying that rule, the court said that the proper focus is not merely on the existence of the parent-child relationship, but rather on the nature of the particular parental conduct involved. *Winn v. Gilroy, supra*, 296 Or at 731. We turn, then, to the *Restatement* rule and the parental conduct alleged in the third-party complaint.

The *Restatement (Second) Torts* § 895G provides that parental liability may not exist in a particular case if the conduct at issue is "privileged" or "not tortious." Accordingly, we begin by determining whether the conduct alleged in defendants' third-party complaint is privileged. Certain categories of conduct, otherwise tortious in nature, are shielded from liability by virtue of a privilege, created either by consent or by law. *See, e.g., Bank of Oregon v. Independent News*, 298 Or 434, 437, 693 P2d 35, *cert den* 474 US 826 (1985) (qualified privilege for otherwise defamatory statements if made without malice); *Comini v. Union Oil Co.*, 277 Or 753, 756, 562 P2d 175 (1977) (consent granted to interfere with contract). The parties have failed to provide any authority in support of the conclusion that the conduct alleged in the third-party complaint is subject to a privilege, and we find none.

We next consider whether the conduct alleged in defendants' third-party complaint can properly be characterized as "not tortious" conduct, as that phrase is used in the

*Restatement*. Although the court in *Winn* declined to articulate any broad rule for classifying parental conduct as tortious or "not tortious" under section 895G, it did suggest that

> "[i]t is possible to distinguish between those obligations that a parent owes his or her child specifically by virtue of parenthood from the general duty of ordinary care to avoid foreseeable harm that the defendant would owe to other persons, for instance to someone else's child, under the same circumstances. Negligence suffices to make the parent liable for the child's injury in the second kind of case though perhaps not for substandard performance of specifically parental duties, where a more stringent test * * * may remain proper." *Winn v. Gilroy, supra*, 296 Or at 732.

That is consistent with the comment to section 895G that, "[i]f the conduct giving rise to an injury does not grow *directly out of the family relationship*, the existence of negligence may be determined as if the parties were not related." *Restatement (Second) Torts* § 895G, *comment k* at 430. (Emphasis supplied.) According to the *Restatement*, if the conduct grows directly out of the family relationship, it may be considered tortious only if it is "palpably unreasonable." *Restatement (Second) Torts* § 895G, *comment k* at 431. The qualifier that "palpably unreasonable" conduct may give rise to liability is congruent with the common law notion that parental immunity extends to "ordinary negligence." *Cowgill, Adm'r v. Boock, Adm'r*, 189 Or 282, 301, 218 P2d 445 (1950).[1]

Thus, according to the court's dictum in *Winn* and the comment to the *Restatement* section that the court adopted in that case, determining whether parental conduct is "not tortious" involves a two-step inquiry. First, it must be determined whether the conduct entails strictly parental obligations. If not, the conduct may be evaluated without regard to the relationship of the parties. If so, a second determination is required: whether that strictly parental conduct is merely unreasonable, in which case it is "not tortious," or whether it is "palpably unreasonable," in which case the conduct may give rise to parental liability.

---

[1] In later cases, Oregon courts held that parental immunity extends to all parental conduct, unless the conduct is wilful or wanton. *See, e.g., Chaffin v. Chaffin*, 239 Or 374, 388, 397 P2d 771 (1964). However, in *Winn*, the Supreme Court held that the view of immunity expressed in *Chaffin* "has been suspended," and replaced by the court's adoption of section 895G of the *Restatement*.

Unfortunately, *Winn* offers little guidance for resolution of either step in the analysis. The court mentions a number of possibilities concerning the nature of the obligations that arise out of the family relationship, including the parents' responsibility for

> "physical conditions in the home, for food and medical care, for recreation, sports, toys, and games, and for general supervision * * *." *Winn v. Gilroy, supra,* 296 Or at 732.

Nevertheless, the court explicitly refrained from articulating "a single verbal formula" to define which of those responsibilities may be considered strictly parental. Not surprisingly, defendants urge us to consider the conduct at issue here — attending scuba diving school — as falling outside of a narrow range of obligations that arise directly out of the family relationship: the provision of food, shelter and medical services. Plaintiffs contend that their conduct falls squarely within parents' obligations to provide for their child's general supervision, educational and recreational needs.

We are not convinced that the category of "not tortious" parental conduct extends to all conduct that involves "general supervision." Such a test would leave little, if any, parental conduct subject to liability, and that clearly was not the course the Supreme Court charted in *Winn*. On the other hand, we are not convinced that the court in *Winn* intended as narrow a range of protected parental conduct as defendants suggest, particularly when the comment to section 895G of the *Restatement* includes "proper instruction and training" among those activities to be considered as arising directly out of the family relationship. *Restatement (Second) Torts* § 895G, *comment k* at 431. Whatever the precise boundaries of protected parental conduct may be, we conclude that attendance at a sports or recreational activity such as scuba diving school falls within them. Plaintiffs' conduct, therefore, was "not tortious" unless it was "palpably unreasonable."

The term "palpably unreasonable" is not defined in the *Restatement*. However, the standard of "gross negligence," which is defined as reckless disregard of the rights of others, appears to be the closest approximation. *See Williamson v. McKenna,* 223 Or 366, 388-89, 354 P2d 56 (1960); *DeYoung v. Fallon,* 104 Or App 66, 69, 798 P2d 1114 (1990),

*rev den* 311 Or 222 (1991). There remains, then, the issue of whether plaintiffs' conduct may be characterized as constituting gross negligence.

We find that the conduct alleged in the third-party complaint could justify a finding of gross negligence. According to the allegations in the third-party complaint, plaintiffs failed to inform the diving instructors that their son was severely learning disabled and could not retain the information necessary for him to dive safely; that they failed to withdraw their son from the class when they knew or should have known that he did not have the skills to dive safely; that the parents failed to inform the diving instructors that they—and not their child—were completing the weekly quizzes in connection with the classes; and that they failed to heed their son's own requests that he not be required to participate in the open water dive, because he was experiencing stomach pains. That conduct, particularly the acts of concealing material information that directly compromised their son's safety, could justify a jury finding that plaintiffs' actions were grossly negligent. Therefore, even though plaintiffs' taking their son to scuba diving classes may qualify as conduct arising directly out of the family relationship, their conduct as alleged in the third-party complaint cannot be characterized as "not tortious." The trial court, therefore, erred in dismissing the contribution claim against plaintiffs.

Defendants next assign error to the dismissal of their claim for indemnification. We have reviewed defendants' arguments and conclude that the trial court did not err in dismissing that claim.

Defendants' remaining assignments of error do not require discussion.

Judgment on claim for contribution reversed and remanded; otherwise affirmed.

**WARREN, P. J.,** concurring.

I generally concur with the holding of the majority that the recreational activity described in this case falls within protected parental conduct. I also agree that, as a consequence, defendants must prove that plaintiffs' conduct

toward their child was "palpably unreasonable," *i.e.*, grossly negligent, before they may be held liable in contribution.

Based on the majority's discussion of the law, however, I disagree that the third-party complaint states a cause of action. Although defendants may be able to present evidence that would justify a properly instructed jury in concluding that plaintiffs were grossly negligent, there is no allegation to that effect. However, because that issue was not raised below or on appeal and can be cured on remand by an amendment to the third-party complaint, I join with the majority. *See Hendgen v. Forest Grove Community Hospital*, 98 Or App 675, 678, 780 P2d 779 (1989).[1]

---

[1] Where plaintiffs' liability is for negligence and defendants' for gross negligence, our decision in *DeYoung v. Fallon*, 104 Or App 66, 798 P2d 1114 (1990), indicates that the different levels of fault may be compared. By inference, that would apply to this claim for contribution. The question how relative fault is to be weighed by the jury has not been decided.